# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |  |
|---|---|---|
| JOHN MARTIN and UNISOURCE WORLDWIDE, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:12-cv-00769-ODE |
| INDUSTRIAL PACKAGING SUPPLIES, INC., | ) ) ) | |
| Defendant. | ) ) | |

## PLAINTIFFS' OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS OR TRANSFER
## AND MEMORANDUM IN SUPPORT THEREOF

Defendant Industrial Packaging Supplies, Inc.'s ("IPS" or "Defendant")
Motion to Dismiss or Transfer (the "Motion") should be denied because this first-
filed action involves Georgia citizens, damages that occurred in Georgia, and the
majority of pending claims require the application of Georgia law.  Accordingly,
there is no legitimate basis to grant Defendant's request.

Although IPS attempts to depict John Martin ("Martin") and Unisource
Worldwide, Inc. ("Unisource") as engaging in some sort of nefarious scheme in a
"win at all costs" mentality, the fact is they did nothing wrong.  To the contrary,

the undisputed fact remains that Martin and Unisource simply filed this action in Georgia in order to obtain clarification as to their rights *in Georgia* -- the very same state where Martin has worked and lived since 2009 (and continues to do so), where Unisource is headquartered, where IPS recently registered to conduct business, and where IPS harmed Martin and Unisource.  In fact, in light of the above, Martin and Unisource had no justifiable reason to file this action anywhere but Georgia.   Nevertheless, instead of simply responding to Martin and Unisource's Complaint, IPS immediately ran and filed a separate action in South Carolina, after this suit was already pending and with actual knowledge that a Georgia court had jurisdiction over its claims.[1]

Moreover, and perhaps most importantly, after Martin and Unisource filed the initial declaratory judgment action and after this Court denied their Emergency Motion for Injunctive Relief (Dkt. No. 4), they uncovered further wrongdoing by IPS, and on April 2, 2012, filed an Amended Complaint to address each of these new causes of action.  Specifically, Martin and Unisource recently learned that: (1) IPS tortiously interfered with Martin and Unisource's prospective customer

---

[1] The South Carolina case is styled Industrial Packaging Supplies, Inc. v. John Martin and Unisource Worldwide, Inc., in the United States District Court, District of South Carolina, Greenville Division, Civil Action File No. 6:12-cv-00717 (the "South Carolina Action").   A true and correct copy of that South Carolina complaint is attached hereto as Exhibit "A".

relationships in Georgia after Martin began working for Unisource in Georgia; (2) IPS breached Martin's Commission Agreement by failing and refusing to pay him the commissions that Martin earned for selling IPS product while he was working for IPS in Georgia; and (3) IPS failed to promptly and timely pay Martin the commissions he earned while he was working for IPS in Georgia. These new facts form the basis for Counts 4 - 8 of the Amended Complaint.

Simply put, dismissal is inappropriate because Martin and Unisource acted well within their rights when they asked this Georgia Court to determine whether the agreement that Martin, a Georgia resident, signed with IPS nearly a decade before is valid under Georgia law. Dismissal is also inappropriate because the pending South Carolina Action will not resolve all of the issues pending before this Court, as the claims alleged in the Amended Complaint are not mandatory counterclaims and are not pending in the later-filed South Carolina Action.

This case should also not be transferred to the South Carolina Action because IPS has not presented any evidence sufficient to meet its substantial burden of demonstrating that South Carolina is a more convenient forum. In fact, based on the anticipated witnesses in this case, the location of documents, and applicable law, Georgia is clearly the more convenient forum. Therefore, this

14389122v.5

Court should deny IPS' Motion in its entirety, and permit Martin and Unisource to continue pursuing all of their claims in this first-filed case.

## I.  FACTUAL BACKGROUND

In 2009, Martin relocated to Atlanta, Georgia to work for IPS. (Declaration of John Martin ("Martin Dec.") ¶ 3), attached as Exhibit "B"). Prior to that time, he had worked for IPS in Roanoke, Virginia. (Id. at ¶ 4.) Since 2009, Martin has continued to live and work in Georgia. While working for IPS in Georgia, Martin's duties included, but were not limited to, soliciting Georgia clients. (Id. at ¶ 6.) Martin did not travel to South Carolina very frequently as part of his work. (Id. at ¶ 7.)

After working at IPS for nearly a decade, Martin began exploring new job opportunities. (Id. at ¶ 8.) Martin considered leaving IPS because, during his three-year employment in Georgia, he became frustrated after IPS repeatedly miscalculated his commissions and underpaid him moneys owed. (Id.) When Martin requested a copy of his employment agreement with IPS on March 5, 2012, IPS terminated his employment, leaving Martin with a complete lack of certainty

regarding his ability to work as an outside sales representative in the packaging industry in Georgia.[2]  (Id. at ¶¶ 9-12.)

Martin began working for Unisource in Georgia on March 6, 2012 as a sales professional.  (Id. at ¶ 12.)  Unisource is a Georgia-based company and Martin planned to sell to customer accounts primarily in Georgia.  (Id. at ¶¶ 13-14.)  None of Martin's customers are located in South Carolina.  (Id. at ¶ 15.)  During his on-boarding with Unisource, Unisource instructed Martin not to utilize or disclose any of IPS' confidential information while working for Unisource.  (Id. at ¶ 16.)  Because of the uncertainty created by the purported non-compete agreement that Martin executed while at IPS (the "Agreement"), and IPS' threat to enforce the Agreement, Martin and Unisource filed this action seeking a judgment that the overbroad restrictive covenant contained in Martin's Agreement is unenforceable.  (Id. at ¶ 17.)

---

[2] IPS incorrectly states that Plaintiffs have "put a different 'spin' on Martin's abrupt departure and have apparently abandoned their prior claim that he was terminated."  (Motion, p. 6.)  In alleged support of this statement, IPS cites to Paragraph 8 of the Amended Complaint.  Paragraph 8 refers to Martin's 2006 transfer from South Carolina to Virginia, and has nothing to do with his subsequent termination in 2012.  Martin has consistently insisted that he was terminated, as evidenced by Paragraphs 21 through 26 of the Amended Complaint because IPS did, in fact, terminate him.

On Friday, March 9, 2012, just three days after Martin and Unisource filed their Complaint in this case, IPS filed suit against both Martin and Unisource in South Carolina state court, which Martin and Unisource ultimately removed to the District Court of South Carolina.[3]

Since the filing of this Complaint, IPS has failed and refused to timely pay Martin all of the commissions that he earned for sales made while working for IPS in Georgia in accordance to the terms of his Commission Agreement. (Id. at ¶¶ 18-20.) Specifically, on March 31, 2012, Martin was due approximately $10,000 in commissions from IPS. (Id. at ¶ 18.) When Martin communicated with IPS about his earned commissions, they stated that they understood his request but brushed him off. (Id. at ¶¶ 20-21.) To date, Martin has yet to receive his earned commissions from IPS. (Id. at ¶ 21.) On April 2, 2012, based on IPS' failure to pay Martin his earned commissions when they became due and the discovery of other wrongful actions by IPS, Martin and Unisource filed an Amended Complaint against IPS. In addition to the claims made in its initial Complaint, Martin and Unisource alleged tortious interference with business relations (Count IV), breach

_____

[3] Although the Court denied Plaintiffs' Emergency Motion for Injunctive Relief (Dkt. No. 14), the ruling did not preclude or prevent Martin or Unisource -- two Georgia citizens -- from pursuing their viable claims against IPS in Georgia. Instead, the Order simply did not enjoin IPS on an emergency basis from pursing its compulsory claims in South Carolina.

of contract (Count V), quantum meruit (Count VI), violation of the South Carolina Payment of Wages Act (Count VII), and accounting violations (Count VIII).  On April 9, 2012, IPS filed a Motion to Dismiss or, in the alternative, to Transfer Venue, to the United States District Court, District of South Carolina where IPS' action against Martin and Unisource is pending.

Due to the Georgia-specific issues involved in this case, which impact two Georgia citizens and a Defendant who freely engages in business in Georgia,[4] Martin and Unisource respectfully request that the Court deny IPS' Motion in its entirety.

## II.   ARGUMENT AND CITATION OF AUTHORITY

**A.   IPS' Motion to Dismiss Should Be Denied Because the South Carolina Action Cannot Completely Resolve all of the Issues in the Georgia Action.**

1.   The Applicable Legal Standard for Dismissal Under 28 U.S.C. § 2201(a).

IPS makes the dubious request that that this Court dismiss this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), on the alleged basis that: (1) the South Carolina Action will fully resolve Martin and Unisource's

---

[4] Attached hereto as Exhibit "C" is IPS corporate filing to conduct business in Georgia, which was only first submitted on April 14, 2012, **after** the filing of its Motion.

claims; and (2) that Martin and Unisource filed this suit in anticipation of the South Carolina Action.  Both of IPS' arguments are without merit.

It is well established that "[d]eclaratory judgment is a remedy committed to judicial discretion."  <u>A.L. Mechling Barge Lines, Inc. v. U.S.</u>, 368 U.S. 324, 331 (1961).  The discretion is not without limitation, however, and a court's discretion to decline to adjudicate a matter is limited to circumstances where another lawsuit "will *fully resolve* the controversy between the parties."  <u>See</u> <u>Ven-Fuel, Inc. v. Dept. of the Treasury</u>, 673 F.2d 1194, 1195 (11th Cir. 1982) (emphasis added); <u>see also</u> <u>Public Affairs Assocs., Inc. v. Rickover</u>, 369 U.S. 111, 112 (1962) ("[A] District Court cannot decline to entertain such an action as a matter of whim or personal disinclination.")  Specifically, it is reversible error and an abuse of discretion for a court to decline to adjudicate a matter based upon a separate pending action that does not involve all of the same parties and same issues.  <u>See</u> <u>Michigan Tech Fund v. Century Nat'l Bank of Broward</u>, 680 F.3d 736, 742-743 (11th Cir. 1982).  Such is the case here.

   2.   Declining to Adjudicate this Matter Would Be an Abuse of Discretion Because the South Carolina Action Cannot Afford Complete Relief Among the Parties.

IPS makes the hollow argument that dismissal is proper because the South Carolina Action will fully resolve the parties' claims.  This argument is

- 8 -

fundamentally flawed because the two lawsuits do not address the same issues.  In this lawsuit, the questions are whether IPS failed to pay Martin monies owed in Georgia, whether IPS tortiously interfered with Plaintiffs' prospective business relations in *Georgia*, and the effect of the Non-Compete Agreement and its impact on Martin and Unisource's rights and duties under *Georgia* law.  The issue to be resolved in the South Carolina Action is whether Martin breached the terms of his Agreement with IPS -- a place where Martin no longer lives or works and does not seek to do business -- under *South Carolina* law.

A review of the Complaints in both actions illustrates the uniqueness between both suits.  Specifically, Count IV is based on the fact that IPS interfered with Martin and Unisource's relationship with at least one potential customer (that was not an IPS customer) by falsely informing the prospective customer that Martin was prohibited from selling Unisource product to them.  Resolution of this claim requires the application of Georgia law.  Counts V, VI, and VII of the Amended Complaint in this lawsuit are all based on IPS' failure to pay Martin the commissions that he earned for selling IPS' product while working in Georgia.  Because none of these claims are pending in the South Carolina Action, they will

not be resolved there if this case is dismissed.[5]   Accordingly, dismissal of this action is improper and IPS' Motion should be denied.

3. Martin and Unisource Validly Exercised their Rights as Citizens of this State by Filing their Complaint in Georgia.

Despite IPS protestations to the contrary, Georgia is the proper forum to resolve all of Martin and Unisource's pending claims.   Indeed, Plaintiffs are pursuing additional claims that involve Georgia law and occurred in Georgia.[6] Moreover, Martin and Unisource did not engage in forum shopping when they filed this case in Georgia.   Instead, Martin and Unisource simply exercised their right to obtain a declaratory judgment from this Court concerning the enforceability of the Agreement as soon as it became apparent that an actual controversy existed.

---

[5] Moreover, at the hearing before this Court on Martin and Unisource's Emergency Motion for Injunctive Relief, counsel for IPS acknowledged that the claims brought in Martin and Unisource's Complaint were not compulsory counterclaims and would not necessarily be decided in the South Carolina action.   At the time of Martin and Unisource's Emergency Motion, Plaintiff had not brought claims against IPS arising out of IPS' tortious interference or failure to pay Martin his earned commissions.   All of these new claims are not compulsory counterclaims and would not necessarily be resolved in the South Carolina action or subject to South Carolina law, with the exception of the claim under the South Carolina Payment of Wages Act, which is subject to South Carolina law.

[6] Only Count VII of the Amended Complaint (Violation of the South Carolina Payment of Wages Act) requires the application of South Carolina law.   The other seven counts should all be resolved under Georgia law.

- 10 -

Forum shopping occurs when a party runs to foreign jurisdiction in hopes of seeking a tactical advantage.   It is undisputed that that did not happen here. Rather, Martin and Unisource simply filed suit in the same state where Martin lived and worked, where Unisource is headquartered, and where IPS sought to enforce the Agreement.  As such, Georgia is clearly not a forum with a slight or manufactured connection to this controversy.[7]

IPS' reliance on the 11th Circuit's decision in <u>Ven-Fuel</u>, 673 F.2d 1194, 1195 (11th Cir. 1982) to support a dismissal is misplaced.  In <u>Ven-Fuel</u>, the court affirmed the dismissal of Ven-Fuel's case where there was evidence that Ven-Fuel "raced to the courthouse" after receiving a direct threat that the U.S. Government would initiate legal proceedings against it in a Massachusetts court, and where there was no evidence that Ven-Fuel could not assert its defenses in the Massachusetts action.  IPS somehow extrapolates from <u>Ven-Fuel</u> that **all** suits that

---

[7] While Martin and Unisource acknowledge that the Court appears to have accepted IPS' argument that Plaintiffs' engaged in "forum shopping" (Dkt. No. 14), for all of the reasons previously provided and re-iterated herein, Martin and Unisource must respectfully disagree.   In fact, if Martin or Unisource, both Georgia residents, had filed suit anywhere but Georgia, they most certainly would have been accused of forum shopping.  As a result, if filing this action was forum shopping, the only way to avoid forum shopping would have been to not file a lawsuit at all.

are remotely anticipatory should be dismissed pursuant to 28 U.S.C. § 2201(a).

IPS' interpretation is wrong.

For example, in Manuel v. Convergys Corp., 430 F.3d 1132, 1135-36 (11th Cir. 2005), the 11th Circuit Court of Appeals explained that **multiple** factors should be considered when determining the proper forum for a lawsuit:

> As to the second objection, Convergys argues that the filing in Georgia constituted improper forum shopping. We agree with the district court that there is nothing inequitable in Manuel seeking legal advice and later choosing to work in a state that shared his view that the NCA [non-compete agreement] was invalid and unenforceable. See McCuin v. Texas Power & Light Co., 714 F.2d 1255, 1261 (5th Cir. 1983) ("The existence of these choices [among various jurisdictions] not only permits but indeed invites counsel in an adversary system, seeking to serve his client's interests, to select the forum that he considers most receptive to his cause."). Moreover, an analysis of the equitable considerations available to the district court does not compel the conclusion that Georgia's connections to this action are slight or manufactured. *Several relevant considerations favor the Georgia forum. Apart from being the forum where the action was first filed, Manuel works and lives in Georgia, where the alleged violation of the NCA occurred. Additionally, many, if not most, of the potential witnesses that Convergys might have called in this action are located in Florida, a neighboring state to Georgia*....

Id. at 1137 (emphasis added).

Further supporting Plaintiffs' arguments that they did not engage in either forum shopping or anticipatory filing is the fact that the 11th Circuit Court of Appeals did not find forum shopping or anticipatory filing in Manuel. Indeed, in Manuel (also a non-compete case), the evidence supporting a potential finding of

- 12 -

forum shopping and anticipatory filing were substantially more apparent than the facts in this case.  There, Manuel moved to Georgia and obtained an apartment and Georgia driver's license only *11 days* before filing his declaratory judgment suit, and was told explicitly by counsel that he needed to file suit first if he wanted avoid the terms of a non-compete agreement.  Id.  Despite this evidence, the Court still did not find forum-shopping or anticipatory filing.  Rather, the Court held that there was "nothing inequitable in Manuel seeking legal advice and later choosing to work in a state that shared his view that the NCA was invalid and unenforceable."  Id.

By comparison, there is *no* evidence in this case that Martin and Unisource moved to Georgia simply to file suit or raced to the courthouse in order to deprive IPS their rightful choice of forum.  Instead, Martin and Unisource filed this action in Georgia to determine whether a non-competition agreement devoid of any geographic boundaries is valid in Georgia.  Moreover, Martin has been a resident of Georgia since 2009, where the alleged violation of the non-competition agreement occurred, and where the majority of potential witnesses reside.  Therefore, even if the Court considers Plaintiffs' suit as "anticipatory" -- a point which Martin and Unisource certainly do not concede -- this determination alone does not mandate dismissal because such a finding is but one equitable factor

among many that the Court must consider.   Manuel, 430 F.3d at 1135-36.

Accordingly, IPS' argument is without merit and does not provide a legitimate

basis for this Court to dismiss Martin and Unisource's claims.

**B.    IPS' Motion to Transfer Should Be Denied Because the Balance of Factors Supports Venue in this Court.**

Section 1404(a) allows the Court to transfer to another proper venue when

such transfer is made for the convenience of the parties and is done in the interest

of justice.   See 28 U.S.C. § 1404(a); see also Paul Hastings, Janofsky & Walker,

LLP v. City of Tulsa, Oklahoma, 245 F. Supp. 2d 1248, 1260 (N.D. Ga. 2002).   In

deciding the transfer motion, the Court should consider the convenience of the

parties, the convenience of the witnesses, and the interest of justice.   Id.   Transfer

should be denied if -- as here -- it would merely shift inconvenience from one party

to another.   Id.; see also Associated Hygienic Products, LLC v. Tracy, 2000 U.S.

Dist. LEXIS 19931, at *13 (N.D. Ga. Aug. 7, 2000).   Indeed, it is well-settled that

transfer pursuant to § 1404(a) must be to a more convenient forum, not simply to a

"forum likely to prove equally convenient or inconvenient."   See Van Dusen v.

Barrack, 376 U.S. 612, 645-646 (1964).   Therefore, IPS must not only show that

the District of South Carolina is a convenient forum for this dispute, but that the

South Carolina District is *substantially more* convenient than the Northern District

of Georgia.   IPS, however, fails to meet this burden.   Indeed, the proverbial "plane" clearly went down in Georgia.

The Eleventh Circuit Court of Appeals has identified nine factors relevant to analyzing a motion to transfer venue under § 1404(a):

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Convergys Corp., 430 F.3d at 1135 n.1.   As detailed below, each of the nine factors weigh in favor of venue in this Court.   Given the fact that IPS does not even address elements (3), (4), (5), (6), (7) or (9) in their Motion, Plaintiffs can only assume IPS concedes these points.   Nevertheless, all of the factors are in favor of keeping this action in this District and are discussed below, in turn.

1.   The Convenience of the Witnesses Mandates a Denial of IPS' Transfer Motion.

Transferring this action to the District of South Carolina would inconvenience key non-party witnesses who would likely be called to testify in this matter.   Those witnesses include certain former customers that Martin serviced

while at IPS who reside in Georgia.  One of these potential witnesses has already stated that he is unwilling to travel to South Carolina to participate in any proceeding related to IPS' lawsuit against Martin and Unisource.  (See Declaration of Mark DeNyse, attached as Exhibit "D").

In fact, while there are numerous customers in Georgia who are potential witnesses and would be inconvenienced in traveling to South Carolina, there are **no** customers in South Carolina.  IPS has never even alleged that Martin or Unisource have interfered with any customers or potential customers in South Carolina. Therefore, convenience of non-party witnesses weighs strongly in favor of keeping this action in this District.  Ramsey v. Fox News Network, LLC, 323 F. Supp. 2d 1352, 1356-7 (N.D. Ga. 2004).

2.    The Location of Key Documents Likewise Mandate a Denial of IPS' Transfer Motion.

Despite IPS' cursory assertions to the contrary, the location of documents clearly weighs in favor of denying transfer.  To the extent that Martin and Unisource have any documents at issue in this case, any and all such documents are located in Georgia, not South Carolina.  Additionally, as noted above, no customers who are potential witnesses in this case are in South Carolina. Therefore, none of these customers have any responsive documents that are located in South Carolina.  Indeed, any and all communications regarding customers or

14389122v.5

prospective customers involving Martin or Unisource should be in Georgia. Plaintiffs also expect that to the extent that IPS alleges it has a protectable business interest in Georgia, IPS' Georgia tax and payroll records will be at issue and that these documents should be located in Georgia.

With respect to documents in IPS' possession, these documents are controlled by a party and likely to be easily transferred.  Whatever the evidence, it is presumably easily scan-able, email-able, fax-able, etc.  In dealing with motions to transfer, Courts have stated that access to documents has "been given decreasing emphasis due to advances in copying technology and information storage."  Dendy v. Decker Truck Line, Inc., Civil Action No. 2:10-cv-459-MHT (WO), 2010 WL 3398987 at *3 (M.D. Ala. Aug. 26, 2010) citing Mohamed v. Mazda Motor Corp., 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000).  Accordingly, IPS' argument regarding the location of evidence does not support its argument.

3.     The Convenience of the Parties Mandates a Denial of IPS' Transfer Motion.

Both Plaintiffs in this case are Georgia citizens, including the only individual party.  As evidenced by their decision to file suit in Georgia, Martin and Unisource have made themselves available to this Court.  The only Defendant, IPS,

is a corporation recently licensed to conduct business in Georgia.[8]  It cannot be too inconvenient for IPS to come to Georgia for this case or it would not have registered to do business here.  While South Carolina may be a more convenient forum for IPS, "[m]erely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." Scheidt v. Klein, 956 F.2d 963, 966 (10th Cir. 1992).

    4.    The Locus of Operative Mandates a Denial of IPS' Motion.

The locus of operative facts also clearly favors the Northern District of Georgia.  While the parties disagree as to the precise location of the locus of operative facts, it is undisputed that **none** of the events relevant to this action occurred in South Carolina **except** the signing of Martin's employment agreement **nine years** ago.  In contrast, it is apparent that most of the operative facts giving rise to this action occurred in the Northern District of Georgia.  Three significant events are centered in the Northern District of Georgia.  First, both Martin and Unisource live and work here -- and have so for some time.  Second, IPS failed to pay, Martin (who is a Georgia citizen) his earned commissions that Martin earned while working in Georgia.  Third, the alleged breaches of the Agreement occurred

_____

[8] Notably, IPS just recently filed its incorporation in Georgia, but failed to notify this Court about it.

in Georgia.   Therefore, because most of the events giving rise to this claim occurred in the Northern District of Georgia, this factor weighs in favor of not transferring this action.

> 5.    The Availability of Process to Compel the Attendance of Unwilling Witnesses Mandates a Denial of IPS' Motion.

As noted in Section 1 above, potential witnesses in this case include certain former customers that Martin serviced while at IPS who reside in Georgia.  Many of these potential witnesses are more than 100 miles from the court in South Carolina, and therefore, outside the South Carolina court's subpoena power.  One such witness, DeNyse, lives over 100 miles from Greenville, South Carolina, and already has stated that he is unwilling to travel there to participate in the pending South Carolina Action.  It is currently unknown how many other witnesses outside South Carolina's subpoena power are unwilling to voluntarily participate in the South Carolina Action, but to date, IPS has not come forward with *any* potential witnesses who will do so.  Accordingly, this factor weighs in favor of keeping this action in this District.

> 6.    The Relative Means of the Parties Mandates a Denial of IPS' Motion.

The relative means of the parties also supports venue in this Court.  While IPS and Unisource are companies of means, having to litigate this case in South Carolina will place a tremendous burden on Martin.  Martin's compensation is

commissioned-based and having to expend time driving to and from South Carolina to litigate this case is not only a serious inconvenience, but will cut into his livelihood.

7.     Governing Law Mandates a Denial of IPS' Transfer Motion.

There is no question that Georgia law applies to Martin and Unisource's common law claims (Counts 3, 4, 5, 6, and 8).  As to the nondisclosure and noncompetition claims (Counts 1 and 2), Georgia has a strong public policy against the enforceability of non-compete agreements similar to the one in this case. Therefore, because Georgia law should apply to these claims, it makes more sense that both are resolved by a Georgia Court.  Of the eight pending claims, only one claim requires the Court to apply non-Georgia law (Count 7 - Violation of the South Carolina Payment of Wages Act).  Accordingly, this factor weighs in favor of keeping this action in this District.

8.     Martin and Unisource's Choice of Forum Mandates a Denial of IPS' Motion to Transfer.

The 11th Circuit has previously noted that "plaintiff's choice of forum is typically given great weight and generally should not be disturbed unless it is *clearly outweighed* by other considerations."  Robinson v. Giamarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) (emphasis added, internal citations and quotations omitted).  Here, Plaintiffs' choice of forum is not clearly outweighed.

- 20 -

As previously noted, the Northern District of Georgia is the home district for both Martin and Unisource, where IPS sought to enforce the Non-Competition Agreement, and where Martin and Unisource chose to file suit.  Therefore, there is no question that this District has meaningful ties to the controversy.

Martin and Unisource acknowledge there is a separate action pending in South Carolina that involves similar (but not identical) issues as this case, but even IPS itself has previously acknowledged, however, that "there are times when two lawsuits involving similar issues may proceed simultaneously.  This is one such case." (Dkt. No. 12, p. 5).  This maybe such a case.[9]

### 9.     Transfer to the District of South Carolina Will Not Further the Interests of Justice.

Section 1404(a) directs the Court to consider the "interest of justice" when deciding a motion for transfer.  See 28 U.S.C. § 1404(a).  Under this analysis, the Court should assess "access to evidence, availability of witnesses, and the cost of obtaining witnesses."  See Paul Hastings, 245 F. Supp. 2d at 1260.  However, the purpose of Section 1404(a) is to protect the interests of justice, not to allow one

---

[9] While this action and the South Carolina Action may eventually proceed simultaneously, at this point, the South Carolina Court simply declined to transfer the South Carolina Action based on the "first to file" rule.  That being said, the South Carolina Action may ultimately be transferred pursuant to Section 1404 or dismissed as a compulsory counterclaim to this case.

party to shift the burden to its adversary.  See Associated Hygenic Products, 2000 U.S. Dist. LEXIS 19931 at *13-14.  As discussed above, the relevant evidence in Martin and Unisource's possession, custody, or control is located in Georgia. Furthermore, IPS has not shown that (i) a single one of their witnesses will not be available for a trial in Atlanta, let alone that such witness testimony cannot be effectively presented by depositions, or (ii) production of their documents in this district would present any greater burden than production in the District of South Carolina.

Further, the Northern District of Georgia has a strong interest in adjudicating the scope of the non-compete agreement that impacts two Georgia citizens and a company that recently registered to do business in Georgia and does business in this state.  Viewed from any angle, IPS has not met its burden in justifying why this case should be transferred to the District of South Carolina.

14389122v.5

## <u>CONCLUSION</u>

For all of the forgoing reasons, Martin and Unisource respectfully request that the Court deny IPS' Motion to Dismiss or Transfer this action.

Respectfully submitted, this 26th day of April, 2012.

SEYFARTH SHAW LLP

By: *<u>/s/ Eric F. Barton</u>*
John A. Sherrill
Georgia Bar No. 642300
Robert C. Stevens
Georgia Bar No. 680142
Eric F. Barton
Georgia Bar No. 040704

*Attorneys for Plaintiffs*

1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia  30309-2401
Telephone: (404) 885-1500
Facsimile:  (404) 892-7056

14389122v.5

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.1(D), N.D.GA.</u>

This is to certify that the foregoing memorandum has been prepared in Times Roman 14 point font and is no more than twenty-five (25) double-spaced pages in length, in compliance with L.R. 7.1(D).

*/s/ Eric F. Barton*

Eric F. Barton
Georgia Bar No. 040704

## CERTIFICATE OF SERVICE

I certify that on April 26, 2012, I electronically filed *PLAINTIFFS'*
*OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER AND*
*MEMORANDUM IN SUPPORT THEREOF* with the Clerk of Court using the
CM/ECF system, and mailed copies to the following attorneys of record:

William H. Foster, Esq.
Nelson Mullins Riley & Scarborough, LLP
104 South Main Street
Ninth Floor
P.O. Box 10084 (29603-0084)
Greenville, SC 29601

*/s/ Eric F. Barton*
Eric F. Barton
Georgia Bar No. 040704

*Counsel for Plaintiffs*